59 F.3d 180
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Reuben R. ROWAN, Petitioner,
v.
DEPARTMENT OF TRANSPORTATION, Respondent.
 No. 94-3388.
 United States Court of Appeals, Federal Circuit.
 March 13, 1995.
 
 Before ARCHER, Chief Judge, SKELTON, Senior Circuit Judge, and SCHALL, Circuit Judge.
 DECISION
 PER CURIAM.
 
 
 1
 Reuben R. Rowan appeals the decision of the Merit Systems Protection Board (board) in Docket No. DE-0752930484-I-1 issued on May 3, 1994, which denied Rowan's petition for review of the initial decision of the Administrative Judge (AJ) issued on December 2, 1993. The board affirmed the action of the agency, the Federal Aviation Administration (FAA), in removing Rowan from his position of Flight Data Processor for being absent without official leave (AWOL), failure to follow management instructions, and failure to comply with a direct order to report for duty. Because the decision of the board is supported by substantial evidence, and considering all the Douglas factors, the penalty was not unreasonable, we affirm.
 
 DISCUSSION
 
 2
 The agency filed three charges of misconduct against Rowan, namely: (1) absence without leave (AWOL) from May 3 through June 8, 1993 (the date a notice of proposed removal was issued); (2) failure to follow management instructions and agency procedures concerning submission of medical information in support of the foregoing absence; and (3) failure to comply with a direct order to report for duty on June 1, 1993. His removal by the agency followed, effective July 14, 1993. He appealed his removal to the board, which referred the case to an AJ who conducted a hearing and affirmed the removal decision of the agency. The board denied Rowan's petition for review. He has now filed an appeal with this court.
 
 
 3
 At the conclusion of the hearing, the AJ made findings of facts which are substantially as follows: Rowan was employed by the agency on July 5, 1988, as an Air Traffic Assistant at Olathe, Kansas, and on March 21, 1993, was assigned to the position of Flight Data Processor. On February 24, 1993, he wrote a letter to his supervisor James Busalacki stating that he "was taking stress leave, to be effective immediately". He included in his letter a doctor's prescription form initialed by his doctor, Scott Bowlin. The form contained these written words: "O work until seen by me in 2 weeks". No other medical information was furnished at that time. Rowan had not asked for leave in advance and did not indicate when he would return to work. Busalacki advised Rowan by letter dated February 26, 1993, that the medical information he had furnished was inadequate. The letter also informed him that because he had not asked for leave and had not furnished adequate medical information, he was being placed in AWOL status. He was also told that continued AWOL or failure to furnish adequate medical information justifying his absence from work could result in disciplinary action against him. Busalacki requested Rowan to furnish detailed reasons for his absence and a medical certificate from his doctor. The letter informed Rowan that the specific information the medical certificate would have to contain was as follows: "... a written statement signed by a licensed practicing physician or other practitioner which certifies the nature of your incapacitation; the treatment used, including medication and any possible side effects; the period of your incapacitation; any restrictions to work activities, and the nature of any similar restrictions recommended for non-work related activities; a prognosis; and, if applicable, the date that you can return to duty."
 
 
 4
 Rowan did not furnish the indicated medical certificate nor the required medical information. On March 10, 1993, he submitted a second prescription form from his doctor containing only the words "O work at present job x 3 weeks". On March 31, 1993, he furnished a third prescription form from his doctor which stated "absolutely O work x 2 wk". His supervisor wrote him a letter on April 6, 1993, telling him that he still had not submitted adequate medical information and reminded him of the previous letter of February 26, 1993, as to what would be acceptable medical information. He again reminded Rowan that if he did not furnish the required medical information disciplinary action could be taken against him. Rowan responded by letter of April 7, 1993, saying "I am not obligated to provide anything more than the documentation from Dr. Bowlin that you already have".
 
 
 5
 On April 14, May 5 and May 27, 1993, Rowan submitted three more Bowlin initialed prescription forms containing vague references to "stress" but providing no medical information at all. In the meantime, on April 14, 1993, he submitted the following letter from Dr. Bowlin.
 
 
 6
 I first saw Mr. Rowan on 2/24/93 secondary to anxiety, heart palpitations and insomnia. Subsequent evaluation and work-up revealed severe uncontrolled hypertension. I started the patient on medication for his blood pressure and have been following him closely ever since.
 
 
 7
 At this time I feel his hypertension is being exacerbated by the problems he has been having at work. The patient relates increased stress and anxiety the past few months. As a result his blood pressure readings have vacillated depending on what has been going on at his work.
 
 
 8
 I feel that it would be in the patient's best interest if he stayed away from any stress-induced activity until either his blood pressure is under better control or his job situation changes ....
 
 
 9
 It is obvious from this letter that Rowan was complaining of being subjected to stress due to his job related activities. However, at the time the above letter was written the agency had on March 21, 1993, transferred him from his position of Air Traffic Assistant where he alleged he was under stress to the position of Flight Data Processor where he would work under a different supervisor.
 
 
 10
 Based on the limited medical information contained in Dr. Bowlin's letter of April 14, 1993, Rowan's more senior supervisor, Christopher R. Blum, who had replaced Busalacki, informed Rowan in writing that he was granting him approved leave from April 12 to April 30, 1993, but stated that the medical evidence he had previously submitted was inadequate. He ordered him to submit additional medical information not later than May 7, 1993. Blum's letter then listed the following seven detailed areas of medical information he expected Rowan to submit pursuant to his order:
 
 
 11
 1. The history of your medical condition(s), including findings from previous examinations, treatment, and responses to treatment;
 
 
 12
 2. Clinical findings from the most recent medical evaluation, including any of the following which have been obtained; findings of physical examination; results of laboratory tests; X-rays; EKG's and other special evaluations or diagnostic procedures;
 
 
 13
 3. Diagnosis, including the current clinical status;
 
 
 14
 4. Prognosis, including plans for future treatment and an estimate of the expected date of full or partial recovery;
 
 
 15
 5. An explanation of the impact of the medical condition on overall health and activities, including the basis for any conclusion that job restrictions or accommodations are or are not warranted, and where they are warranted, an explanation of their therapeutic or risk avoiding value;
 
 
 16
 6. An explanation of the medical basis for any conclusion which indicates the likelihood that you are or are not expected to suffer sudden or subtle incapacitation by carrying out, with or without accommodation, the tasks or duties of your position; and,
 
 
 17
 7. A narrative explanation of the medical basis for any conclusion that the medical condition has or has not become static or well stabilized and the likelihood that you may experience sudden or subtle incapacitation as a result of the medical condition.
 
 
 18
 Rowan notified Blum by letter of May 5, 1993, that he had no additional medical information to provide. Blum concluded that he was not disabled and then placed him in AWOL status effective May 3, 1993, and ordered him to report for duty on June 1, 1993. On May 26, 1993, Rowan advised the agency in writing that it would have to pay for any further medical information from Dr. Bowlin. He did not report for duty on June 1, 1993, as ordered by Blum, nor at any time thereafter. The agency removed him from his job on July 14, 1993, based on the three charges it had filed against him.
 
 
 19
 On appeal, Rowan contends that the findings of the AJ are not supported by substantial evidence. We disagree. As to the first charge that he was AWOL from his position from May 3 through June 8, 1993, the evidence is undisputed that he did not report for duty during that period. In fact he did not report for duty at any time from February 24 to July 14, 1993. He never applied for leave in advance. The AJ sustained this charge, and we conclude that his decision was fully supported by substantial evidence.
 
 
 20
 The second charge alleged that Rowan failed to follow agency instructions and procedures concerning the furnishing of medical information explaining and supporting his absence from work. Despite repeated requests and demands of his superiors for adequate medical information justifying his absence, he did not submit it. As shown above, on two different occasions his supervisor notified him in writing of the specific items of medical evidence that were required to show that he was disabled from work, but he still did not furnish it. He did submit one letter from Dr. Bowlin, which is quoted above, that contained some medical information, but it was very limited, open-ended and ambiguous. It was also conclusory for the most part and based largely on Rowan's subjective complaints. Nowhere did it supply the agency with any objective diagnostic medical tests that Bowlin had conducted. There was no statement in Bowlin's letter that Rowan was disabled nor that he was medically unable to perform the work of his assigned position, and there was no indication when he could be expected to return to work. Blum notified Rowan in writing that Bowlin's letter was inadequate, and he ordered Rowan to submit adequate medical information by May 7, 1993. Rowan did not furnish the information by that date nor at any time thereafter. He had previously notified Blum by letter dated April 7, 1993, that he was not obligated to furnish any more medical information. On May 26, 1993, Rowan advised the agency that if it wanted any additional medical information, it would have to pay for it. This was indeed a strange attitude on the part of Rowan since the burden of proving that he was disabled was on him and not on the agency. The AJ held that the second charge was sustained, and it is our view that his decision was supported by substantial evidence.
 
 
 21
 The third charge alleged that Rowan failed to obey a direct order of his supervisor Blum to report for duty on June 1, 1993. It is undisputed that he did not report for duty on that date nor at any other time thereafter. The AJ sustained the charge, and we hold that his decision was supported by substantial evidence. We hold further that Blum was authorized to issue the order, and that Rowan wilfully refused to obey it. Under these circumstances Rowan was guilty of insubordination. See Phillips v. General Servs. Admin., 878 F.2d 370, 373 (Fed. Cir. 1989)
 
 
 22
 Rowan contends that the penalty of removal is too severe. The AJ considered all of the Douglas factors, including Rowan's five years of acceptable service as mitigating circumstances, in deciding that removal was the proper penalty. The AJ found that Rowan was wholly unrepentant and was an unlikely candidate for rehabilitation, and that it was appropriate under all the facts and circumstances for the agency to remove him from his position. We agree.
 
 
 23
 We have considered all of the other arguments raised by Rowan and find them to be without merit.
 
 
 24
 We find no error in the decision of the AJ, which became the decision of the board, and it is affirmed.